Coos,
No. 4342.

NORMAN JACOBS & a., *Ex'rs*

*v.*

ALBERT N. BEAN & a.

Argued October 6, 1954.

Decided October 29, 1954.

*Arthur J. Bergeron* and *J. L. Blais* (*Mr. Blais* orally), for the executors, *amici curiae.*

*Nighswander, Lord & Bownes* (*Mr. Lord* orally), for the guardian *ad litem.*

The petitionees appeared *pro se.*

KENISON, C. J. A will may direct a fiduciary to do the impractical but it cannot require him to do the impossible. *Hayward* v.

*Spaulding,* 75 N. H. 92, 94; N. H. Anno. Restatement, Trusts, *s.* 165. "Sometimes the purpose for which a private express trust was created becomes impossible of accomplishment . . . . " 4 Powell, Real Property, *s.* 567, *p.* 425 (1954). In that case, depending on the provisions of the will as a whole and the circumstances, a court of equity may terminate the trust or permit the fiduciary to deviate from the terms of the trust. 2 Scott, Trusts, *ss.* 165, 167.

After the testator sold his stock to his grandchildren, it was obviously impossible for the executors to carry out his purpose of transferring it in exchange for debenture notes. When the corporation refused to purchase the real estate on the terms stated in the will, it was likewise impossible for the executors to comply with the testamentary directions. When the widow waived the provisions of the will and took her statutory share, the testamentary scheme of distributing the assets of the estate was further impaired. While these events defeated a basic direction and provision of the will, it by no means follows that the dominant purpose of the testator must be nullified. 2 Scott, Trusts, *s.* 167; 3 Bogert, Trusts and Trustees, *ss.* 561, 562. Equity may control the administration of a trust by permitting deviation in order to carry out its dominant purpose "particularly when changing circumstances would otherwise defeat it." *Matter of Herzog,* 301 N. Y. 127, 138; Wentworth, Deviations from Terms of Will, 92 Trusts and Estates 720 (1953).

"The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust." Restatement, Trusts, *s.* 167 (1) and *comment.* The doctrine of deviation has been frequently applied in this state although not always so denominated. *Brown* v. *Berry,* 71 N. H. 241; *Petition of Oliver Wolcott,* 95 N. H. 23; *McGill* v. *Young,* 75 N. H. 133. While deviation is allowed only for cogent reasons and only to the extent necessary to effectuate the primary purpose of the trust (*Citizens Nat'l Bank* v. *Morgan,* 94 N. H. 284), the equitable power to permit it is clear. 1 Nossaman, Trust Administration and Taxation, *s.* 553. The judicial authority to permit deviation from the terms of the trust as it relates to trust property and investments where "a change of circumstances . . . would defeat or

substantially impair the accomplishment of the purposes of the trust" is confirmed by the express provisions of R. L., c. 371, s. 4. That this statute is more limited than the general equitable power of the Superior Court in trust matters is evident from the last sentence of R. L., c. 371, s. 4. It provides that "This section shall not be construed to limit or restrict the general equitable jurisdiction of the court over trustees, trusts or trust funds."

While it is true that the testator knew that the stock could not be transferred to the corporation under his will, the refusal of the corporation to acquire the timberlands and the refusal of the widow to accept the will were circumstances not known to the testator and not anticipated by him. In order to carry out the primary purpose of the testator the court should authorize the trustees to distribute the assets of the estate to the legatees and in the same proportions they would have taken if the testamentary scheme had been possible of accomplishment.

The will indicates the reason that the testator provided that his beneficiaries should receive class A debentures maturing serially after a ten-year period instead of cash at his death was to allow time for the corporation to pay for the assets of the estate which it was to receive. The purpose that Merit and Robert should acquire the stock was accomplished in the testator's lifetime. Since the widow refused to accept the class B debentures and since the class A debentures cannot now be issued on the terms stated in the will, deviation is permissible, unless it must be held that the timberlands passed intestate.

This will is both elaborate and detailed and nowhere carries the slightest hint of partial intestacy. *West* v. *Chase,* 92 N. H. 104, 106. Although the complicated testamentary scheme for distributing the corporate assets failed, the will was careful to provide in the residuary clause that the same children and grandchildren should take in the same proportions that they would have taken in the distribution of the class A debentures under the proposed corporate set-up. The situation is similar to that in *Roberts* v. *Tamworth,* 96 N. H. 223, 227, where it was said that the "detailed provisions of the will clearly indicate that the testatrix was disposing of all of her estate by will . . . . " When a will contains a detailed residuary clause this is some evidence that partial intestacy was not intended. "The fact that there was a detailed residual clause in the elaborate will supports the position that the testator did not intend to die intestate as to part of his estate." *Merchants &c. Bank* v. *Berry,* 93 N. H. 388, 391.

Since the testator's plan of distributing part of his estate is impossible of accomplishment in some respects and impracticable in others, the executors are authorized to deviate from these provisions in order to accomplish the result intended. The executors are advised that no part of the property passes intestate, and they should be permitted to make immediate distribution, subject to the rights of the widow, to the beneficiaries named in the will and in proportions therein stated. The residuary clause contemplated distribution after the issuance of class A and class B debentures. Since that is impossible the trustees are authorized to make the distribution under the residuary clause forthwith. It is to be noted that the deviation permitted in this case does not change the proportion that any devisee is to receive and does not transfer the share of one devisee to that of another. It is no more than is necessary to accomplish the primary objectives of the testator, and is the type of deviation which has been frequently allowed in other jurisdictions. Anno. 80 A. L. R. 117; 4 Pomeroy, Equity Jurisprudence (5th *ed.*) *s.* 1062b; anno. 168 A. L. R. 1019, 1021.

*Remanded.*

All concurred.